Bohn, J.
On September 28 and 29, 1998, this criminal matter was before the court for an evidentiary hearing concerning the loss of evidence, possibly of an exculpatory nature and once in the possession of a person under the direction and control of the prosecutor, but no longer available through the negligence or inadvertence of the record keeper. Specifically, the hearing related to the unavailability of the ITT Hartford Insurance Company file containing the application and related documents for workman’s compensation benefits filed by the defendant in this case. That application, and the representations contained in the application documents, form the basis of the prosecution in this case.
Based on the evidence presented in the course of the two-day hearing, it is the opinion of this Court that the file at issue and documents contained in that file are material to the defendant’s case; that there is a strong possibility, based on concrete evidence rather than a fertile imagination that access to the contents of the file would have produced evidence favorable to the defendant’s cause; that, although there is no evidence that the government lost or destroyed the evidence in bad faith, it is nevertheless culpable in its failure to preserve potentially exculpatory evidence; and that, because the Commonwealth has deprived the defendant of the opportunity effectively to cross examine and potentially to impeach the putative originator of the critical documents at issue, that person’s testimony must be suppressed in order to insure defendant’s constitutional due process right to a fair trial.
FINDINGS OF FACT
At some point prior to January 1996, the Insurance Fraud Bureau of the Automobile Insurance Bureau of Massachusetts began its investigation of a complaint involving defendant Harwood to the effect that he had fraudulently applied to ITT Hartford for workmen’s compensation benefits. In the course of that investigation, ITT Hartford voluntarily provided an IFB investigator with the original file concerning Harwood’s claim. Included in that file were two documents central to this case: a letter dated February 2, 1990, allegedly signed by one Lief Mikkelsen, purporting to affirm that Mr. Harwood was employed in Mikkelsen’s business from April 16, 1989 through June 27, 1989; and, an average weekly wage computation schedule, DIA Form 117, prepared sometime after the February 5, 1990 letter, which also reported that Mr. Harwood had been employed by Mikklesen during the April-June, 1989 period.[1]
Between January 1996 and February 1997, the original ITT Hartford file remained in the custody of the IFB investigator. On or about February 3, 1997, however, the investigator was asked by ITT Hartford to return its file. Before doing so, the investigator withdrew and withheld the original DIA Form 117 referred to above, made copies of the remaining documents and returned the file, including the original of *199 the February 2, 1990 letter, to the ITT Hartford office at Burlington, Massachusetts.
On February 13, 1997, an assistant attorney general began the presentation of the case against defendant Harwood to the members of the Grand Jury. In the course of that presentation, a copy of the February 2, 1990 letter was offered through the IFB investigator, who then testified that the letter was not written by Leif Mikkelsen; that Leif Mikkelsen had never seen the letter until shortly before the Grand Jury proceedings; and that the signature on the letter had been forged.
On February 27, Mikkelsen appeared before the Grand Jury. In his testimony, he stated that he had not signed the February 2, 1990 letter, had not written it and was not aware of it until it was shown to him by the Commonwealth.[2] The defendant was indicted on February 27, 1997, and has been charged with one count of forgery and one count of insurance fraud.
On October 29, 1997, defense counsel filed a motion for the production of certain original documents, including a specific request for the February 5, 1990 letter. The motion was allowed on December 17, 1997. At the time the motion was filed and allowed, the defendant’s file, which contained the original of the February 5, 1990 letter, was in ITT Hartford’s Burlington, Massachusetts office.
On April 30, 1998, defense counsel again requested the original of the February 5, 1990 letter. Further requests for the letter were made on June 24 and June 29, 1998; however, in August 1998, defense counsel was informed by the prosecutor that in April or May 1998, defendant’s original file had been shipped from ITT Hartford’s Burlington, Massachusetts office to ITT Hartford’s Connecticut office and was lost.
Defendant has a specific need for the original February 5, 1990 letter in order to complete a handwriting analysis by an expert so that, if it is not a forgery, he may cross-examine the Commonwealth’s key witness, defendant’s alleged employer during the period of April — June 1989.
RULINGS OF LAW
As a general rule, “the Commonwealth has the duty not to destroy exculpatory evidence; rather, it must preserve such evidence for the defendant to inspect, examine, or perform tests on, if he chooses.” Commonwealth v. Sasville, 35 Mass.App.Ct. 15, 19 (1993) citing Commonwealth v. Neal, 392 Mass. 1, 10-12 (1984).
When a claim has been made that the Commonwealth has lost, destroyed or otherwise failed to preserve evidence in its possession, custody or control, the defendant may establish a “reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [lost material] would have produced evidence favorable to his cause. Commonwealth v. Woodward, 427 Mass. 659, 678 (1998); Commonwealth v. Neal, 392 Mass. 1, 12 (1984); Commonwealth v. Sasville, 35 Mass.App.Ct. at 20.
If a defendant does establish that the Commonwealth has lost potentially exculpatory evidence, upon request by the defendant, the Court must consider the appropriateness and extent of remedial action to ensure the defendant’s right to a fair trial. Commonwealth v. Sasville, 35 Mass.App.Ct. at 21, citing Commonwealth v. Willie, 400 Mass. 427, 432 (1987). In determining the appropriateness and extent of the remedy, the Court must employ a balancing test in which “the culpability of the government will be weighed along with the materialiiy of the evidence and the potential prejudice to the defendant." Commonwealth v. Woodward, 427 Mass. At 678; Commonwealth v. Sasville, 35 Mass.App.Ct. at 21, citing Commonwealth v. Charles, 397 Mass. 1, 14 (1986).
In the present case, it is clear that the documents at issue, including the original of the February 5, 1990 letter, were material to the defendant’s case and that the loss of defendant’s file is prejudicial to his defense. If the signature on the letter is a forgery, a substantial element of his defense is weakened. If the signature on the letter is not a forgery, the Commonwealth’s principal witnesses may be impeached and the defendant’s case substantially advanced. The defendant requires the original of the letter in order to obtain a handwriting analysis. The original letter is not available and, consequently, a material piece of evidence has been lost and the defendant has been prejudiced.
It is also clear that the Commonwealth is responsible for the inadvertent loss of the document and, therefore, is culpable. At the hearing before this Court, an assistant attorney general who was the principal prosecutor in the case testified that he did not take any particular steps or effort to insure that documents that had been produced would be preserved nor did he issue any directives or admonitions to IFB investigators that would convey to them the critical importance of preserving such records; rather, according to the assistant attorney general, he relied on general instructions given verbally to IFB investigators in the course of several conferences between the agencies, and on what he understood to be a general set of instructions sent to investigators by the IFB general counsel. Given the significance of the documents at issue here, those efforts fell below the duty imposed. As the Court held in Commonwealth v. Henderson, 411 Mass. 309 (1991) “there may be cases in which the defendant is unable to prove that the state acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." Id. at 311.
At the hearing before this Court, the Commonwealth argued that the defendant’s original ITT Hartford file was returned to Hartford by an ITT investigator prior to its use by the assistant attorney general before the Grand Jury; and that the Common *200 wealth cannot, therefore, be held responsible for the negligence of that investigator nor of ITT Hartford. It is this Court’s opinion, however, that the special, statutorily-created relationship between the IFB and the Office of the Attorney General, described more particularly in this Court’s Memorandum of Decision and Order on Defendants’ Motion to Dismiss, to Disqualify Prosecuting Counsel, and For Other Relief, dated July 31, 1998 [8 Mass. L. Rptr. No. 30, 678 (September 28, 1998) (Bohn, J.)], suggests otherwise. The obligation to preserve information of the type at issue here is upon the prosecutor and those who “have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.” Commonwealth v. St. Germain, 381 Mass. 256, 261-62 n.2. See also Commonwealth v. Woodward, 427 Mass. At 679. In the unique statutory scheme which created the IFB, that non-governmental agency was given certain investigatory powers that, at least for the purposes of preserving potentially exculpatory evidence, bring it under the general supervisory umbrella of the office of the prosecutor. The loss of the documents in this case is, in the end, a question of fundamental fairness for which the Commonwealth must assume responsibility.
THE REMEDY
As noted above, it is the opinion of this Court that the loss of the evidence at issue was not occasioned by bad faith. For that reason, and because a remedy short of dismissal would seem to serve the ends of fairness, the indictments in this case will not be dismissed as a consequence of the inadvertent or negligent acts of those under the prosecutor’s supervision. See Commonwealth v. Woodward, 427 Mass. 659, 677-80 (1998); Commonwealth v. Cinelli, 389 Mass. 197, 210 (1983) (”(a)bsent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice”). Compare Commonwealth v. Henderson, 411 Mass. 309 (1991) (indictment dismissed); Commonwealth v. Sasville, 35 Mass.App.Ct. 15 (1993) (same).
In the present case, the Commonwealth apparently intends to rely on the testimony of Lief Mikkelsen to establish the allegation that defendant Harwood fraudulently applied for workman’s compensation benefits. There is the possibility, however, that Mikkelsen, with whom the Commonwealth has entered into a non-prosecution agreement, was not truthful in his testimony before the Grand Jury and in his current disavowal of initiating the February 5, 1990 letter. Because the defendant has lost the opportunity to obtain a handwriting analysis of the February 5, 1990 letter and has, therefore, been deprived of the opportunity effectively to cross examine Mr. Mikklesen, Mikklesen’s testimony will be suppressed.
ORDER
For the reasons stated above, the testimony of Mr. Lief Mikkelsen will be and is hereby suppressed.

These two documents are critical to this case because, if the information contained in the document to the effect that the defendant was employed at Mikkelsen’s business at the time indicated, he may have rightfully claimed concurrent employment at the time of his injury. Conversely, if the documents are forged or are otherwise incorrect, and defendant was not employed at Mikkelsen’s business at the time of his injury his claim for concurrent employment may be found to be fraudulent.

There is some reason to believe Mr. Mikkelsen did not testify truthfully to members of the Grand Jury in this regard in that defense counsel produced at the hearing on this matter a letter dated April 5, 1990 from a claims representative of ITT Hartford addressed to Mr. Mikkelsen returning to him the February 5, 1990 letter and asking for further information relating to that letter.